```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

Albert Tito

    v.                                          Case No. 18-cv-025-SM

N.H. State Prison Warden,       Opinion No. 2020 DNH 048
Michael Zenk, et al.[1]

## **O R D E R**

Before the court is the motion for summary judgment (Doc. No. 135), filed by the defendants remaining in this case: New Hampshire State Prison ("NHSP") Warden Michelle Edmark, in her official capacity; and former NHSP Warden Michael Zenk, NHSP Sgt. Gary Lydick, and NHSP Corrections Officers ("COs") Geoffrey Boffitto, Jason Caruso, Farradon Young, Dominic Salce, and Timothy Miller, in their individual capacities.[2] Also before the court is defendants' motion (Doc. No. 134), seeking to modify the May 15, 2019 Order that granted in part and denied in part an earlier motion regarding their answer.

The motion for summary judgment (Doc. No. 135) seeks judgment as a matter of law on all of the remaining claims that the plaintiff, Albert Tito, has asserted against the defendants,

---

[1]The claims against all other defendants named by Mr. Tito have been dismissed. See Nov. 27, 2018 Order (Doc. No. 104); Oct. 15, 2018 Order (Doc. No. 94).

[2]Michelle Edmark replaced Michael Zenk as the NHSP Warden in 2018.

based on defendants' contention that Mr. Tito did not exhaust his NHSP grievance remedies before filing this action, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Mr. Tito filed an objection to the motion for summary judgment, in which he refers generally to the record before this court. See Pl.'s Obj. to Mot. Summ. J. (Doc. No. 144), at 1. Defendants have filed a reply (Doc. No. 145) arguing that plaintiff has failed to show either that there is a triable question as to whether he properly exhausted the generally available grievance remedies, or that the grievance process was unavailable to him.

## **Background**

Mr. Tito's claims in this lawsuit, arising under 42 U.S.C. § 1983, relate to incidents that occurred while he was an NHSP inmate, prior to his March 2018 transfer to the Northern New Hampshire Correctional Facility ("NCF"), and his subsequent release from custody in 2019. Mr. Tito asserts generally that while he was at the NHSP, guards there singled him out for harassment, abuse, and mistreatment, in violation of his First, Eighth, and Fourteenth Amendment rights, and that the NHSP Warden failed to protect him.

The defendants in their summary judgment motion (Doc. No. 135) seek judgment as a matter of law on the claims that remain

in this case, all arising under 42 U.S.C. § 1983. Those claims
are:

    1.   NHSP Sgt. Lydick and NHSP COs Young, Boffitto, and
Caruso, violated Mr. Tito's Eighth Amendment rights on
November 9, 2017, in that, while Mr. Tito was complying
with their orders, handcuffed with his hands behind his
back, and outside the presence of other inmates:

        a.   Sgt. Lydick and COs Young, Boffitto, and Caruso
forced Mr. Tito down to the floor, causing injuries;

        b.   COs Young and Boffitto, and/or the other
officers, punched Mr. Tito in the face, causing pain,
swelling, bruising, and lacerations on his face and
scalp, blurred vision, and other injuries;

        c.   Sgt. Lydick drive-stunned Mr. Tito multiple times
with a Taser pressed against his back and face,
causing pain and injuries; and

        d.   CO Boffitto knelt on Mr. Tito's back after the
punching stopped, as Sgt. Lydick put him in leg
shackles.

    2.   The NHSP Warden failed to protect Mr. Tito, in
violation of the Eighth Amendment, in that:

        a.   NHSP Warden Zenk, with deliberate indifference to
a substantial risk of serious harm to Mr. Tito, prior
to November 9, 2017, failed to protect him from the
officers involved in the November 9 incident; and

        b.   The NHSP Warden failed to protect Mr. Tito from
those officers after November 9, 2017, with deliberate
indifference to a substantial risk that officers would
harm him again.

    3.   Sgt. Lydick and COs Young, Boffitto, and Caruso,
retaliated against Mr. Tito for exercising his First
Amendment rights, in that they participated in the November
9, 2017 use-of-force incident, in retaliation for Mr.
Tito's filing of a grievance on October 1, 2017.

    . . . .

7. COs Salce, Young, and Miller violated Mr. Tito's Fourteenth Amendment right to equal protection by maliciously singling him out for different treatment, in that, when Mr. Tito was in the NHSP Special Housing Unit ("SHU") on Pending Administrative Review ("PAR") status, those officers allowed his cellmate, Alfred Nyoni, to have out-of-cell time to shower, use the phone, and recreate, while denying the same opportunities to Mr. Tito.

. . . .

11. COs violated Mr. Tito's Fourteenth Amendment right to equal protection by maliciously targeting him for different treatment than every other SHU inmate, in that:

>   a. CO Salce issued Mr. Tito an ill-fitting gown without Velcro, and a soaked mattress without a cover, when Mr. Tito was on suicide watch in SHU for two days in August 2017; and
>
>   b. SHU guards, including CO Salce, denied Mr. Tito's requests for a change of clothes over sixteen days in September 2017.

See Oct. 15, 2018 Am. R&R (Doc. No. 93), approved by Nov. 27, 2018 Order (Doc. No. 104).

## **Summary Judgment Motion (Doc. No. 135)**

I. Summary Judgment Standard

"Summary judgment is warranted if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Luceus v. Rhode Island, 923 F.3d 255, 256-57 (1st Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). If the party moving for summary judgment bears the burden of proof on an issue, that party "must provide evidence sufficient for the court to hold that no reasonable trier of fact could find

4

other than in its favor." Am. Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008).

Rule 56(c) provides that a party asserting that a fact either cannot be or is genuinely disputed "must support the assertion" by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); see also Fed. R. Civ. P. 56(c)(1)(B) advisory committee's notes (2010) ("a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").

This court's local rules require a party moving for summary judgment to "incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a). "All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." LR 56.1(b). As Mr. Tito is proceeding pro se, his pleadings are

construed liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

II. PLRA Exhaustion

Defendants have moved for summary judgment based on their contention, in support of an affirmative defense, that Mr. Tito, having filed this lawsuit while still incarcerated, failed to exhaust his administrative remedies as required by the PLRA. The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies in this case because Mr. Tito was an NHSP inmate at the time he filed the pleading that started this case, even though he has since been released. See Ojo v. Hillsborough Cty. Dep't of Corr., No. 12-cv-204-SM, 2014 DNH 102, 2014 U.S. Dist. LEXIS 63009, at *8, 2014 WL 1803309, at *3 (D.N.H. May 7, 2014) ("The plain language of the PLRA indicates that the exhaustion requirement applies to inmate plaintiffs but does not apply to former prisoners or others who are not confined or incarcerated when they file suit.").

The PLRA's exhaustion requirement is designed to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524–25 (2002). The PLRA "requires proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 93 (2006), which means an inmate must use all of the steps that the prison grievance system makes available in its administrative grievance process, and do so in conformity with the prison's deadlines and other critical procedural rules, id. at 90. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). There is one exception to the rule requiring that a prisoner exhaust all of the administrative remedies provided by the prison, that is, "a prisoner need exhaust only 'available' administrative remedies," Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); remedies that were not in fact "available" need not be exhausted.

III. <u>NHSP Grievance Procedures</u>

The New Hampshire Department of Corrections ("DOC") Policy and Procedure Directive ("PPD") 1.16 establishes a three-step grievance process that DOC inmates must use to seek formal review of complaints concerning the conditions of their confinement. <u>See</u> PPD 1.16 Sect. I, III (Doc. No. 135-3); <u>see</u>

also Decl. of Joan Jepson ¶ 5 (Doc. No. 135-2).  PPD 1.16 states that the timeframes set out in the policy and the use of appropriate forms are "mandatory," that untimely requests and grievances will be dismissed, and that grievances that are not on the correct form will be returned unanswered.  See PPD 1.16 Sect. IV(E), IV(F).

The first step in the grievance process requires an inmate to send an Inmate Request Slip ("IRS") to the "appropriate staff" member, generally an officer or other staff member subordinate to the Warden, within thirty calendar days of the date of the incident.  PPD 1.16 Sect. IV(A).  The Warden may waive the first-level IRS requirement if the inmate asks for a waiver within thirty days of the incident and demonstrates that complying with the first-level IRS requirement "is likely to result in identifiable risk of harm to [the inmate's] physical safety or psychological well-being."  PPD 1.16 Sect. IV(A)(4).

The second step in the grievance procedure is an appeal of the response to the first-level IRS.  That appeal must be addressed to the Warden, using a Grievance Form.  PPD 1.16 Sect. IV(B).  An inmate must submit an appeal to the Warden "within 30 calendar days" from the date of the response to the first level IRS, PPD 1.16 Sect. IV(B)(1), unless the Warden has granted an extension, PPD 1.16 Sect. IV(B)(4).

The third step in the grievance process is an appeal of the Warden's decision to the DOC Commissioner's Office, using a Grievance Form. See PPD 1.16 Sect. IV(C). The Commissioner's Office must receive that appeal "within 30 calendar days of the date of the [Warden's] response," although the Commissioner may grant an extension of that time period. PPD 1.16 Sect. IV(C)(1), IV(C)(4).

IV. Defendants' Burden as to Exhaustion Defense

The failure to exhaust available prison grievance remedies is an affirmative defense as to which defendants bear the burden of proof. See Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). At the summary judgment phase, defendants bear the initial burden of showing that plaintiff failed to exhaust generally available administrative remedies. See Hubbs v. Suffolk Cty. Sheriff's Dep't, 788 F.3d 54, 59 (2d Cir. 2015); Albino, 747 F.3d at 1172; Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) (defendants initially "bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies"). Then, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172; see

9

also Tuckel, 660 F.3d at 1254.  See generally Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jiménez, 659 F.3d 42, 50 n.10 (1st Cir. 2011) (after defendant moving for summary judgment on affirmative defense produces "conclusive" evidence to establish defense, burden shifts to plaintiff to show that defense does not apply).

To establish their entitlement to summary judgment on their affirmative failure-to-exhaust defense, as to each of the claims that remain in this case, defendants have the initial burden of demonstrating, by reference to documents (as specified in Rule 56(c)), that Mr. Tito did not follow the steps required by PPD 1.16 with respect to each of his claims.  Defendants' summary judgment submissions consist of a motion and a memorandum that includes a statement of facts and arguments, accompanied by a copy of PPD 1.16 (Doc. No. 135-3) and other records that defendants assert they produced to Mr. Tito, consisting of: an October 1, 2017 IRS and the Warden's November 2, 2017 response (Doc. No. 135-4); and two IRSs including responses (Doc. Nos. 135-5, 135-7) and a "speed memo" from the Warden addressed to Mr. Tito (Doc. No. 135-6), all of which post-date November 9, 2017.  Those exhibits are authenticated by another exhibit to the summary judgment motion, the Declaration of Joan Jepson (Doc. No. 135-2), an assistant to the DOC Commissioner, who identifies each of those records as true and correct copies of

what they appear to be.  Nothing in Ms. Jepson's declaration, however, states that the records she authenticates represent the universe of pertinent grievance records in the DOC files relating to the November 9, 2017 incident.  Nor does her declaration aver any facts relating to Mr. Tito's grievance efforts concerning any other claims at issue in the motion for summary judgment.

Within the memorandum filed in support of defendants' motion for summary judgment, defendants include a "Statement of Undisputed Facts."  In that section, defendants assert that, apart from the records filed as exhibits to their Motion for Summary Judgment, "[n]o other IRS or grievance forms exist within the 30 day period immediately following the November 9, 2017 use of force incident."  Defs.' Mem. of Law in Supp. of Mot. for Summ. J. (Doc. No. 135-1), at 6.  Neither Ms. Jepson's declaration, nor any other evidence or document before this court substantiates that assertion.  See Fed. R. Civ. P. 56(c)(1)(A) ("[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record").  Where there is no support in the record for defendants' assertion that there are no other pertinent grievance records, an issue as to which they bear both the initial burden of production and the ultimate burden of persuasion, this court declines to decide at this

point whether the documents they filed with the summary judgment motion, viewed in isolation, are deficient relative to PPD 1.16's requirements. Cf. Hale v. Abangan, No. 3:15-cv-170-CWR-FKB, 2017 U.S. Dist. LEXIS 144931, at *13-14, 2017 WL 3974956, at *5 (S.D. Miss. Aug. 4, 2017) (where defendants' summary judgment motions were not properly supported by evidence regarding facts asserted, and court doubted that grievance records submitted to court were complete, those motions were inadequate to establish deficiencies in inmate's exhaustion efforts), R&R approved, 2017 U.S. Dist. LEXIS 143924, 2017 WL 3908974 (S.D. Miss. Sept. 6, 2017).

Similarly, defendants have argued -- without any evidentiary support -- that Mr. Tito did not file any proper IRSs or grievances relating to his remaining claims, and thus failed to exhaust the prison's grievance remedies with respect to those claims. See, e.g., Defs.'s Mem. of Law in Supp. Of Mot. for Summ. J. (Doc. No. 135-1), at 10 ("no first, second, or third level inmate request slips or grievance forms exist identifying known, pervasive violence or threats of violence against the plaintiff"); Doc. No. 135-1, at 13 ("plaintiff never filed a first step IRS, second step Grievance Form with the Warden, or a third step Grievance Form" to DOC Commissioner properly raising issues in Claims 7, 11(a), 11(b)). But defendants have not supported those factual assertions and

conclusions by citation to the materials specified in Rule 56(c)(1)(A). Under those circumstances, with respect to this matter on which they bear both the burden of production and the burden of persuasion, defendants' motion for summary judgment is not properly granted. See Escobar v. Reid, 668 F. Supp. 2d 1260, 1286 (D. Colo. 2009) (court declined to grant motion for summary judgment on PLRA exhaustion defense where defendants "failed to present any evidence or specific facts supporting their affirmative defense, and instead, simply rest[ed] on the conclusory assertions contained in their pleadings, the one thing they may not do on a motion for summary judgment"), R&R adopted, 668 F. Supp. 2d at 1271.

If either party fails to properly support an assertion of fact in moving for summary judgment, or in responding to such a motion, the court may issue any appropriate order. See Fed. R. Civ. P. 56(e). The court thus denies defendants' motion for summary judgment but qualifies that denial to make it without prejudice. Defendants are granted leave to refile a similar motion, by April 17, 2020, which provides appropriate support for the assertions as to which they bear the burden of proof, consistent with Rule 56, LR 56.1, and this Order. Mr. Tito's objection to such a motion -- which must also be supported by appropriate record citations, documentary exhibits, and/or

13

affidavits or declarations under 28 U.S.C. § 1726 -- is due by May 15, 2020.³ Defendants' reply is due by May 29, 2020.

**<u>Motion to Modify Court Order (Doc. No. 134)</u>**

Defendants have moved to modify the May 15, 2019 Order, which states that defendants "may limit the scope of their answer" to certain pleadings and to specific parts of the October 15, 2018 Amended Report and Recommendation (Doc. No. 93) ("Amended R&R"). Defendants ask the court to modify that Order to remove the statement indicating that the scope of their answer may address any parts of the Amended R&R or its identification of claims. Mr. Tito has not objected to the motion to modify that Order.

The motion to modify (Doc. No. 134) is granted; the May 15, 2019 Order, which granted in part and otherwise denied Defendants' Motion to Waive Answer (Doc. No. 124), is vacated; and the text listed in the Conclusion of this Order is substituted for it.

---

³Mr. Tito's objection (Doc. No. 144) to the summary judgment motion at issue lacks any supporting exhibits or references to specific, pertinent parts of the record, and instead baldly asserts that he has "established" that "[p]roper paperwork, and avenues to forward complaints were compromised by staff in the facility," and that, "besides the IRS defense chose to outline, almost every complaint made by plaintiff in regards to all issues raised in each claim followed the proper procedure." Pl.'s Obj. to Summ. J. Mot. (Doc. No. 144). Such factual allegations require evidentiary support for this court to take them into consideration in ruling on a motion for summary judgment on a claim-specific failure-to-exhaust defense.

14

**Mootness of Injunctive Relief/Official Capacity Claims**

In this action, Mr. Tito requested an order transferring him to a different facility to protect him from threats to his safety at the NHSP.  Mr. Tito's March 2018 transfer to NCF, and his subsequent release in 2019, have mooted all of his requests for injunctive relief.  See Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) (in the absence of claims for damages, "[a] prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer or release").  Mootness provides a basis for this court, sua sponte, to grant judgment for the defendants, as a matter of law, on all of Mr. Tito's claims for injunctive relief, which comprise the remaining official capacity claims in this lawsuit.  Cf. Anderson v. Rehmer, 696 F. App'x 536, 537 (2d Cir. 2017) (affirming sua sponte dismissal of complaint seeking only injunctive relief, as inmate's "transfer to a new facility prevents him from seeking either injunctive or declaratory relief against officials of his prior facility").

Accordingly, the court dismisses those claims, to the extent they seek injunctive relief.  The court further directs that the current NHSP Warden be dropped as a defendant, as there are no claims for damages asserted against her in this action.  The claims that survive this Order are the damages claims

asserted against former NHSP Warden Michael Zenk, NHSP Sgt. Gary Lydick, and NHSP COs Geoffrey Boffitto, Jason Caruso, Farradon Young, Dominic Salce, and Timothy Miller, in their individual capacities.

Conclusion

For the foregoing reasons, the court orders as follows:

1.  The defendants' motion for summary judgment (Doc. No. 135) is DENIED, without prejudice.

2.  Defendants are granted leave to refile a similar summary judgment motion, by April 17, 2020, based on PLRA exhaustion, which complies with the requirements of Rule 56 and LR 56.1.  Plaintiff's objection to that motion, along with plaintiff's witness affidavits, declarations under 28 U.S.C. § 1746, or other exhibits to that objection, must be filed by May 15, 2020.  Defendants' reply is due by May 29, 2020.

3.  Defendants' motion to modify the May 15, 2019 Order (Doc. No. 134) is GRANTED.  The May 15, 2019 Order -- granting in part and otherwise denying Defendants' motion to limit the scope of their answer -- is hereby vacated, and the following Order is substituted:

> For reasons stated in defendants' motion (Doc. No. 124) to limit the scope of their answer, the court grants in part the relief requested, and otherwise denies that motion (Doc. No. 124).  The motion (Doc. No. 124) is granted in part, to the extent that defendants may limit the scope of their answer to the factual allegations in the initial

16

Complaint (Doc. No. 1) and Amended Complaint Part II (Doc. No. 6-1).

4. The court dismisses all of Mr. Tito's official capacity/injunctive relief claims and drops the current NHSP Warden as a defendant.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

March 25, 2020

cc: Albert Tito, pro se
 Anthony Galdieri, Esq.
 Lawrence Edelman, Esq.